UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL L. LEWIS,** | ) | Case No. 1:12 CV 3003 |
| | ) | |
| Plaintiff, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **THE CLEVELAND CLINIC FOUND.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is a partial motion for judgment on the pleadings (**Doc #: 9**). Plaintiff Michael Lewis filed the instant lawsuit against his former employer, Defendant Cleveland Clinic Foundation ("the Clinic"), along with Defendants Cleveland Clinic Police Department ("the CCPD"), Clinic Police Chief David Easthon, and Clinic Police Commander Robert Sims (collectively, "Defendants"). In the Complaint, Plaintiff alleged that, in terminating his employment, Defendants violated his rights under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code Chapter 4112. Plaintiff also alleged a § 1983 due process claim against the Clinic and the CCPD, as well as claims for intentional infliction of emotional distress, civil conspiracy, and defamation.

On December 7, 2012, Defendants removed the case from state to federal court based on the Court's original jurisdiction over the federal claims and supplemental jurisdiction over the

-1-

state law claims. On January 3, 2013, Defendants filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), seeking dismissal of the Title VII race discrimination and retaliation claims against individual Defendants Sims and Easthon, the § 1983 Due Process claim against Clinic and its Police Department, and the civil conspiracy claim against all Defendants. (Doc. #9).

At the Case Management Conference ("CMC"), Plaintiff's counsel acknowledged that Plaintiff could not bring Title VII claims against his former co-workers or supervisors (i.e., Easthon and Sims). Plaintiff's counsel also agreed that Plaintiff could not bring a civil conspiracy claim against Defendants due to the intra-corporate conspiracy doctrine, i.e., a corporation cannot conspire with its employees.

Following the CMC, Plaintiff filed an amended complaint removing the Title VII claims against Easthon and Sims, and the civil conspiracy claim in its entirety. (Doc #: 13 ("FAC").) Thus, the only issue before the Court at this time is whether Plaintiff can bring a § 1983 due process claim against the Clinic and its Police Department based on his discharge. The Court has reviewed the motion, the opposition and reply briefs, and the record, and is prepared to issue its ruling.

**I.**

On August 18, 2008, Plaintiff began his employment at the Clinic as a police officer. (FAC ¶ 9.) On February 5, 2011, Plaintiff, while off duty, was arrested by Cleveland police on charges of possessing a weapon while intoxicated, aggravated menacing, criminal trespass, and unnecessary noises. (Id. ¶ 20.) Plaintiff eventually pled guilty to a misdemeanor (unnecessary noises), was fined $228 and released. (Id. ¶ 29.)

Upon receiving notice of Plaintiff's arrest, Clinic Police Chief Easthon suspended Plaintiff and began an internal investigation into the circumstances surrounding his arrest. (FAC ¶¶ 24, 32.) On February 24, 2011, Lewis attended a meeting with Defendants Easthon and Sims, CCF Sgt. Edward Smith, and the Clinic's Human Resource Representative Melissa Frank. (Id. ¶ 35.) Defendant Easthon told Plaintiff he was terminated from his police duties based on the internal investigation of his off-duty conduct. (Id.) Defendant Easthon also told Plaintiff that he would be fired if he did not voluntarily resign. (Id.) Faced with this choice, Plaintiff resigned.

The Cleveland Clinic Foundation is a private, non-profit hospital which maintains its own police force, i.e., the CCPD. The CCPD operates pursuant to Ohio Revised Code § 4973.17, and in conjunction with an agreement with the City of Cleveland Police Department.

Plaintiff contends that, because he was a commissioned police officer under O.R.C. § 4973.17, he had a constitutionally recognized property interest in his continued employment, the Clinic's decision to fire him constituted state action, and he maintained a liberty interest in his good name entitling him to a name clearing hearing prior to his discharge. He further alleges that the Clinic is a person under § 1983 whose every act is taken under color of state law. (FAC ¶ 12.)

Defendants contend that Plaintiff cannot state a constitutional due process claim against them because the Clinic is a private employer, the decision to terminate him was a private action (versus state action), and he had no constitutionally recognized property or liberty interest in his continued employment.

-3-

**II.**

The Court reviews a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) under the same standard that is applicable to a Rule 12(b)(6) motion. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). In determining whether the complaint states a claim upon which relief can be granted the Court accepts the plaintiff's factual allegations as true and construes the facts in the light most favorable to the plaintiff. *Gunaskera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

In order to survive a motion for judgement on the pleadings the complaint must assert enough factual allegations "to state a claim to relief that is plausible on its face." *Aschcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). A complaint satisfies the plausibility requirement when the plaintiff alleges sufficient facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (*citing Twombley*, 550 U.S. at 556). The determination of whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

In order to bring a § 1983 due process claim, "a party must have a property or liberty interest of which it is deprived by state action, as the Fourteenth Amendment 'erects no shield against merely private conduct, however discriminatory or wrongful.'" *Lure, Inc. v. Michigan Bell Tel. Co.,* 238 Fed. App'x 18, 22 (6th Cir. 2007) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). A viable § 1983 claim requires a plaintiff allege that: "(1) he or she was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and

(2) the deprivation was caused by a person acting under the color of state law." *Peace v. Wellington*, 211 F. App'x 352, 357 (6th Cir. 2006) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978)).

### A.   State Action

Generally speaking, "[p]rivate individuals and companies do not act under color of state law." *Stephens v. Grandview Med. Ctr. Police Dep't*, No. 3:12 CV 82, 2012 WL 1884129, at *4 (S.D. Ohio May 22, 2012) (quoting *Thomas v. Better Bus. Bureau*, 79 Fed. App'x 748 (6th Cir. 2003), in turn citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). *See also Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) ("A private entity acting on its own does not "trigger the presence of state action."). The only exception to this rule is if *the actions* of the private individual or corporation so approximate state action that the they may fairly be attributed to the state. *Stephens*, 2012 WL 1884129, at *4; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

There is no dispute that commissioned police officers can exercise the same police powers as officers employed by the City, and that CCPD policy informs the officers of the constitutional rights and protections the officers must observe while performing their duties as Clinic officers. That the Clinic's officers must abide by the same constitutional restrictions as municipal police officers when investigating crimes occurring on Clinic property, however, does not necessarily turn the Clinic into a public employer whose every employment decision is taken under color of state law.

The Sixth Circuit employs three tests to determine whether a private individual acts under color of state law: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Chapman v. Higbee Co.*, 319 F.3d 825, 828 (6th Cir. 2003) (en banc); *Lansing*, 202 F.3d at 828. Whether state action exists is a question of law to be determined by the Court. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). According to Plaintiff, Defendants' decision to terminate his employment constitutes state action under all three tests. (Opp. Br. at 9.)

Under the "public function test," state action may occur when the private entity exercises powers traditionally reserved exclusively to the state. *Chapman*, 310 F.3d at 833; *Stephens* 2012 WL 1884129, at *4 (citing, inter alia, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)). Thus, an entity may be a state actor for some purposes but not for others. *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996), 91 F.3d at 1230.

In a nearly identical case, a U.S. District Court in the Southern District of Ohio recently concluded that a discharged police officer employed by a private hospital could not bring a § 1983 due process claim against the employer based on his status as a commissioned police officer. *Stephens v. Grandview Med. Ctr. Police Dep't*, No. 3:12 CV 82, 2012 WL 1884129 (S.D. Ohio May 22, 2012). With regard to the public function test, the district court found that, assuming a private police force performs a public function traditionally reserved to the state when performing law enforcement services for the hospital, the hospital's decision to terminate its employee was not also a state action. *Id.*, 2012 WL 1884219, at *4 (citing *Bell v. Mgmt. & Training Corp.*, 122 Fed. App'x 219, 223 (6th Cir. 2005); in turn citing *Wolotsky v. Huhn*, 960 F.3d at 1333, 1335 6th Cir. 1992); *Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984); *George*,

91 F.3d at 1230-32; *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996); *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107, 109 (7th Cir. 1001). The Court agrees. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a motion to dismiss. *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 662). The Court finds that Plaintiff's conclusory assertion that the Clinic "at all times relevant to this case acted under color of state law" does not satisfy the public function test.

The "state compulsion test" requires that a state exercise such coercive power, or provide such significant encouragement, that the conduct of the private entity is, as a matter of law, deemed to be that of the state. *Stephens*, 2012 WL 1884219, at *5 (citing *Wolotsky*, 960 F.2d at 1334, in turn citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). More than mere approval or acquiescence on the part of the private party is necessary to hold the state responsible for the private party's conduct. *Id*. Plaintiff does not allege that the City of Cleveland or the State of Ohio encouraged or coerced Defendants into terminating his employment, nor that Defendants somehow approved or acquiesced in what was essentially the state's employment decision. Additionally, in *Stephens*, the district court pointed out that "[a]greements entered into pursuant to Ohio Revised Code § 4973.17 simply do not appear to involve provisions relating to the handling of internal personnel decisions . . ." 2012 WL 1884219, at *5. Other than conclusory assertions, Plaintiff's allegations are devoid of any indication that the city or state had any input or involvement in the decision to discharge him. Thus, his allegations fail to pass the state compulsion test.

Under the "symbiotic relationship test," the action of the private entity constitutes state action when there is a sufficiently close nexus between the state and the entity's challenged action so that the action of the entity may be fairly treated as that of the state. *Stephens*, 2012 WL 1884129, at *6 (citing *Wolotsky*, 960 F.2d at 1336 (internal citations omitted)). Just because a private entity is subject to state regulation, however, does not of itself convert its action into state action. *Id*. Rather, the state must be intimately involved in the challenged private conduct in order for the private conduct to become attributable to the state for purposes of a § 1983 due process claim. *Id*. (citation omitted). According to Plaintiff, because the Clinic officers are commissioned pursuant to O.R.C. § 4973.17, the Clinic and its Police Department should be deemed state actors for all their conduct – including adverse employment decisions. The district court in *Stephens* rejected this argument, finding that there was no allegation that any agreement entered between the municipality and the hospital required municipal involvement when terminating employees or making other personnel decisions. Nor is there any language in the instant agreement between the Clinic and the City regulating in any manner the employment decisions of the Clinic and its police force. As there is no allegation that Defendants' decision to terminate Plaintiff's employment was regulated by the state, the Court concludes that Plaintiff's allegations are insufficient to pass the symbiotic relationship test.

Plaintiff argues that this case resembles *Green v. City of Cleveland*, No. 1:03 CV 906, in which Judge Gwin denied the City's summary judgment motion and held that O.R.C. § 4973.17, in conjunction with an agreement between the City of Cleveland and the Clinic, made the Clinic's officers state actors. *Green* is entirely distinguishable.

-8-

Michael Green was at one time an employee of the Cleveland Clinic Inn who was suspected, after he quit working there, with raping a guest at the Inn. Green was charged and wrongfully convicted of rape, after which he spent 13 years of custodial detention before being exonerated. Following his release, Green sued Clinic investigator Lou DeGross under § 1983 for unconstitutional conduct in investigating and assisting in the procurement of Green's conviction. DeGross sought summary judgment because he was a private employee and not a state actor subject to § 1983 liability. Judge Gwin disagreed. He found that a reasonable jury could find that DeGross acted on behalf of the state because he was "so involved in the investigation of Green's [criminal] case." (Case No. 1:08 CV 906; Doc #: 254, at 15.) Furthermore, "[b]ecause Green thought DeGross was a police officer, a reasonable jury could conclude that DeGross' involvement was tantamount to a police investigation." (Id.)

In this case, neither the Clinic nor its Police Department had any involvement in the City's criminal investigation of Plaintiff. A member of the Cleveland Police Department arrested Plaintiff and charged him with carrying a firearm while intoxicated, aggravated menacing, and unnecessary noises. It was the Cleveland Police Department that conducted the criminal investigation, including interviewing Plaintiff and taking a voluntary statement from him. It was the City of Cleveland that formally charged him, and he was fined by a Cleveland municipal court. There is no allegation that the City had any involvement in the Clinic's decision to terminate Plaintiff's employment or that the City participated in the Clinic's internal investigation of Plaintiff. That the Clinic and/or its Police Department conducted an internal affairs investigation of Plaintiff's conduct does not elevate that employment investigation into a criminal investigation.

In short, Plaintiff has failed to sufficiently allege that Defendants' decision to fire him was somehow attributed to the city or state, or was anything more than the employment decision of a private employer.

### B. Liberty Interest

Although Plaintiff asserts that he had a constitutional property interest in his continued employment, he does not *argue* that it is the property interest of which he was deprived. Rather, he argues that, even if he did not possess a property interest in his employment, he nonetheless had a protected liberty interest in his good name – requiring Defendants to hold a "name clearing hearing" before firing him. (Opp. Br. at 15.) Suffice to say that all cases cited by Plaintiff in support of this argument involved public employees. (See id. at 15-17.) The fact that the Clinic's police officers are commissioned by the State to investigate crime on its property does not make them employees of the state, nor the Clinic a public employer.

### III.

Based on the foregoing, Plaintiff's § 1983 due process claim (Count V) is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

 */s/ Dan A. Polster     March 13, 2013*
**Dan Aaron Polster**
**United States District Judge**